IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

MARY J. MILLER,                )
                               )
        Plaintiff,            )   Case No. 04-737-KI
                               )
  vs.                          )   OPINION
                               )
JO ANNE B. BARNHART,            )
Commissioner, Social Security   )
Administration,                 )
                               )
        Defendant.           )

    Linda Ziskin
    4800 S. W. Meadows Road, Suite 300
    Lake Oswego, Oregon 97035

        Attorney for Plaintiff

    Karin J. Immergut
    United States Attorney
    District of Oregon
    Neil J. Evans
    Assistant United States Attorney
    1000 S. W. Third Avenue, Suite 600
    Portland, Oregon 97204-2902

Page 1 - OPINION

Richard M. Rodriguez
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, Washington 98104-7075

Attorneys for Defendant

KING, Judge:

Plaintiff Mary Miller brings this action pursuant to section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner denying plaintiff's application for supplemental security income benefits ("SSI"). I reverse the decision of the Commissioner.

## DISABILITY ANALYSIS

The Social Security Act (the "Act") provides for payment of disability insurance benefits to people who have contributed to the Social Security program and who suffer from a physical or mental disability. 42 U.S.C. § 423(a)(1). In addition, under the Act, supplemental security income benefits may be available to individuals who are age 65 or over, blind, or disabled, but who do not have insured status under the Act. 42 U.S.C. § 1382(a).

The claimant must demonstrate an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to cause death or to last for a continuous period of at least twelve months. 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind

of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for either DIB or SSI due to disability. The claimant has the burden of proof on the first four steps. Bustamante v. Massanari, 262 F.3d 949, 953 (9th Cir. 2001); 20 C.F.R. §§ 404.1520 and 416.920. First, the Commissioner determines whether the claimant is engaged in "substantial gainful activity." If the claimant is engaged in such activity, disability benefits are denied. Otherwise, the Commissioner proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c) and 416.920(c). If the claimant does not have a severe impairment or combination of impairments, disability benefits are denied.

If the impairment is severe, the Commissioner proceeds to the third step to determine whether the impairment is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d) and 416.920(d). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is presumed to be disabling, the Commissioner proceeds to the fourth step to determine whether the impairment prevents the claimant from performing work which the claimant performed in the past. If the claimant is able to perform work which he or she performed in the past, a finding of "not disabled" is made and disability benefits are denied. 20 C.F.R. §§ 404.1520(e) and 416.920(e).

If the claimant is unable to perform work performed in the past, the Commissioner proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his or her age, education, and work experience. The burden shifts to the Commissioner to show what gainful work activities are within the claimant's capabilities. Bustamante, 262 F.3d at 954. The claimant is entitled to disability benefits only if he is not able to perform other work. 20 C.F.R. §§ 404.1520(f) and 416.920(f).

## STANDARD OF REVIEW

The court must affirm a denial of benefits if the denial is supported by substantial evidence and is based on correct legal standards. Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). Substantial evidence is such relevant evidence as a reasonable person might accept as adequate to support a conclusion. It is more than a scintilla, but less than a preponderance, of the evidence. Id.

Even if the Commissioner's decision is supported by substantial evidence, it must be set aside if the proper legal standards were not applied in weighing the evidence and in making the decision. Id. The court must weigh both the evidence that supports and detracts from the Commissioner's decision. Id. The trier of fact, and not the reviewing court, must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the Commissioner. Id. at 720-21.

## THE ALJ'S DECISION

The ALJ found that Miller had severe impairments of depression, fatigue, vertigo, and hand strength weakness. He limited Miller to a modified range of light exertion. The ALJ concluded that Miller's testimony was not credible as to an inability to perform all work

activities. The ALJ also discredited the opinions of Dr. Marzell and Dr. Trafficante because the opinions were based on Miller's subjective complaints and were not supported by objective medical evidence. Based on the testimony of a vocational expert, the ALJ found that Miller could perform the jobs of small products assembly, motel maid, and food preparation worker and thus was not disabled under the Act.

## FACTS

Miller, who was 35 years old at the time of the hearing, has a GED and work experience as a kitchen helper, day care worker, home attendant, and plating production worker. Miller applied for benefits in 2001 and claims she has been disabled since 1985.

Miller states that she was diagnosed with Epstein Barr virus at the age of seventeen. She experiences dizziness during part of every day. Miller must take a two-hour nap every three hours because she becomes weak and dizzy. Watching television causes dizziness. Miller is unable to get a drivers license due to the dizziness. She claims that she can only carry two pounds. Miller says that she can only walk two to four blocks without needing to rest if she has exerted herself during the day but could walk three or four miles if she had just gotten up in the morning. Miller has constant weakness in her hands. Miller needs to use a bathroom three or four times an hour.

Miller cleans her home and cooks daily, does laundry weekly and shops monthly. Her ex-husbands have custody of her five children. At the time of the hearing, Miller had three of her children, ages five, six, and seven, living with her four days a week.

Miller has a history of emergency room visits. Some are for problems that were resolved, such as acute tonsillitis in 1986, pregnancy problems in January 1995, heat exhaustion in July

1997, pregnancy problems in September 1997, neck pain in August 1999, bee sting in September 1999, date rape in January 2000, and breast pain in May 2000.  Others are for symptoms whose causes could not be specifically diagnosed or resolved, such as postpartum headache, dizziness and vomiting in September 1997; chest and abdominal pain in January 1998; abdominal pain and vomiting in April 2000; altered mental status in April 2001; weakness and chest pain in January 2002; and painful respiration and anxiety in May 2002.  Miller complained of ongoing dizziness and fatigue problems in most of these encounters.

Dr. Marzell wrote a letter on January 16, 2002, after Miller had been her patient for almost three months.  Dr. Marzell believed that it would be difficult for Miller to work due to dizzy episodes, vomiting, and extreme fatigue.  Dr. Marzell thought that some of Miller's problems might be due to her poor nutrition, which should resolve with treatment, but concluded that Miller should be reevaluated in three months.  Miller complained to Dr. Marzell of vomiting about four times a day, usually after meals, and fainting two or three times in the last six months.

Miller was examined by a neurologist, Dr. Ogisu, on February 11, 2002.  He concluded that her problems, at least in part, are psychiatrically based and that her stated limitations cannot be supported on the basis of findings in his examination.

Dr. Brischetto, a psychologist, examined Miller on February 13, 2002.  During the examination, Miller was very focused on her 1986 diagnosis of Epstein Barr virus and the symptoms that it can cause.  Dr. Brischetto noted that when she administered the mental status exam, Miller gave up easily and had a very passive quality about her interaction.  Dr. Brischetto believed that Miller's performance was not a true reflection of her actual ability and likely underestimated it.  Dr. Brischetto concluded that Miller had a depressive disorder but it was not

clear whether it was a clinical depression at the time of the examination. The doctor noted that Miller had only had limited mental health counseling when her daughter died. Dr. Brischetto suggested that an MMPI-2 test might be helpful to rule out somatoform disorder, conversion symptoms, or symptom exaggeration.

Dr. Peter examined Miller for the first time at The Portland Clinic on May 17, 2002. He ordered tests and sought Miller's neurology records. Dr. Peter was considering the use of Zoloft and noted a "[c]oncern for pervasive psychological disorder is certainly most prominent with diffusely positive review of systems and disabled and enabled pattern of behavior with her ex-husband and kids over the past 17 years." Tr. 283.

On June 3, 2002, Dr. Trafficante, another internist at The Portland Clinic, began treating Miller. On June 10, 2002, Dr. Trafficante gave Miller a single sentence excuse from work, "Unable to work due to medical problems." Tr. 274. Dr. Trafficante's chart notes through January 2003 document Miller's complaints of hand weakness, fatigue, vertigo, and depression. He referred her to a neurologist. Miller did not immediately follow through with the neurology consultations due to financial and insurance problems.

## DISCUSSION

I.  Miller's Credibility

Miller argues that the ALJ improperly rejected her credibility. Miller claims that all of her physical symptoms can be attributed to her severe mental impairments and that all of the physicians have commented that this was the case. She also contends that her ability to care for her children does not prove that she can sustain work activity on a full-time basis.

When deciding whether to accept the subjective symptom testimony of a claimant, the ALJ must perform a two-stage analysis. In the first stage, the claimant must (1) produce objective medical evidence of one or more impairments; and (2) show that the impairment or combination of impairments could reasonably be expected to produce some degree of symptom. Smolen v. Chater, 80 F.3d 1273, 1281-82 (9th Cir. 1996). The claimant is not required to produce objective medical evidence of the symptom itself, the severity of the symptom, or the causal relationship between the medically determinable impairment and the symptom. The claimant is also not required to show that the impairment could reasonably be expected to cause the severity of the symptom, but only to show that it could reasonably have caused some degree of the symptom. Id. at 1282. In the second stage of the analysis, the ALJ must assess the credibility of the claimant's testimony regarding the severity of the symptoms. If there is no affirmative evidence of malingering, the ALJ may reject the claimant's testimony only if the ALJ makes specific findings stating clear and convincing reasons for the rejection, including which testimony is not credible and what facts in the record lead to that conclusion. Id. at 1284.

In discounting Miller's testimony, the ALJ noted that there were no objective findings to support the subjective complaints, that numerous examinations had been normal as were the laboratory and diagnostic studies, and that treating and examining physicians were unable to determine an etiology for the physical complaints. The ALJ compared Miller's ability to care for her three young children with her testimony that she has to lie down for six hours a day and cannot even watch television without getting dizzy. He also noted her inconsistent testimony about walking and lifting.

The record supports the ALJ's analysis that there are no objective findings, either physical or mental in nature, to support Miller's complaints. Further, the record supports the ALJ's comparison between Miller's actual daily activities in caring for her young children four days a week and her testimony about fatigue and dizziness. Her testimony about the distances she can walk and the weight she can lift was also inconsistent. I conclude that the ALJ gave clear and convincing reasons for rejecting Miller's testimony and thus properly rejected it.

II.   Rejection of Physicians' Opinions

Miller contends that the ALJ improperly rejected the opinions of Drs. Trafficante and Marzell for lack of objective evidence.

The Commissioner notes that Dr. Marzell, a naturopath, is not an acceptable medical source so her opinion should be treated as a lay opinion. 20 C.F.R. § 416.913(d)(1).

Lay testimony about a claimant's symptoms is competent evidence which the ALJ must take into account unless he gives reasons for the rejection that are germane to each witness. A medical diagnosis, however, is beyond the competence of lay witnesses. Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996). A legitimate reason to discount lay testimony is that it conflicts with medical evidence. Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001).

The ALJ concluded that Dr. Marzell relied exclusively on Miller's subjective complaints when rendering her opinions and that the neurological examinations conducted by Dr. Marzell were essentially normal.

Dr. Marzell does rely extensively on Miller's complaints, which the ALJ appropriately discounted as discussed above. I note that Dr. Marzell's neurological tests show vertigo on each side and extreme difficulty walking straight down the hall or walking on tip toes or heels. Other

neurological tests were normal. Tr. 174-75. Dr. Marzell's opinion that Miller could not work, however, is a diagnosis and not a description of a symptom. Thus, the ALJ does not have to give reasons for rejecting it.

The ALJ discounted Dr. Trafficante's opinion because he also relied solely on Miller's subjective complaints and his laboratory and diagnostic studies were essentially normal.

The weight given to the opinion of a physician depends on whether the physician is a treating physician, an examining physician, or a nonexamining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). More weight is given to the opinion of a treating physician because the person has a greater opportunity to know and observe the patient as an individual. Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996). If a treating or examining physician's opinion is not contradicted by another physician, the ALJ may only reject it for clear and convincing reasons. Even if it is contradicted by another physician, the ALJ may not reject the opinion without providing specific and legitimate reasons supported by substantial evidence in the record. Lester, 81 F.3d at 830. The opinion of a nonexamining physician, by itself, is insufficient to constitute substantial evidence to reject the opinion of a treating or examining physician. Id. at 831. Opinions of a nonexamining, testifying medical advisor may serve as substantial evidence when they are supported by and are consistent with other evidence in the record. Morgan v. Commissioner of Social Security Administration, 169 F.3d 595, 600 (9th Cir. 1999).

A physician's opinion of disability "premised to a large extent upon the claimant's own accounts of his symptoms and limitations may be disregarded where those complaints have been properly discounted." Id. at 602; Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). It

is permissible to reject check-off reports from physicians that do not contain any explanation of the bases for the conclusions. Crane v. Shalala, 76 F.3d 251, 253 (9th Cir. 1996).

Because Dr. Trafficante's opinion is contradicted by the opinion of Dr. Ogisu, the ALJ can reject it by giving specific and legitimate reasons supported by substantial evidence in the record. Dr. Trafficante's opinion is a single phrase without any explanation. It was written in response to a phone call from Miller asking for a note to show her landlord. Tr. 281. At the time he gave it, Dr. Trafficante had only examined Miller one time. He was going to run some blood tests and was trying to get neurological records. The blood tests shows a single level, for MCH (mean cell hemoglobin), that was slightly elevated. Dr. Trafficante had not made a diagnosis on which to base the opinion of disability. The ALJ's rejection of the opinion was based on specific and legitimate reasons supported by substantial evidence in the record.

III.   Step Three Analysis

Miller contends that the ALJ's step three analysis was inadequate because it is an unspecific assertion that is not supported by the record. Miller argues that the ALJ only gave a cursory review of the psychological evidence even though the medical records strongly suggest a somatoform disorder, an IQ-related impairment, and a personality disorder. Miller contends that the ALJ should have obtained testimony from a medical expert to clarify the issues. She points to the ALJ's duty to fully and fairly develop the record.

The Commissioner argues that the circumstances do not fit the requirements under the rules which require the ALJ to call a medical expert.

I believe the underlying issue is whether the ALJ properly developed the record. A Social Security ALJ has an "independent duty to fully and fairly develop the record and to assure that

the claimant's interests are considered." Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (internal quotation omitted). The duty is heightened if a claimant is unrepresented or is mentally ill and cannot protect his own interests. Ambiguous evidence or the ALJ's finding that the record is inadequate to allow for proper evaluation of the evidence triggers the ALJ's duty to conduct an appropriate inquiry, which can include subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing or keeping the record open after the hearing to allow the record to be supplemented. Id.

Here, Dr. Ogisu, Dr. Brischetto, and Dr. Peter thought that there might be a significant psychological component to Miller's physical problems. Other doctors noted Miller's very passive presentation, along with slow movement and speech. Although Dr. Brischetto administered some psychological tests to Miller, she did not administer a full battery and even suggested that an MMPI-2 test would be helpful to determine if there is either malingering or a psychological illness in addition to depression.

I do not think the psychological record has been fully developed. Consequently, the hypothetical question is not valid. Hypothetical questions posed to a vocational expert must specify all of the limitations and restrictions of the claimant. Edlund v. Massanari, 253 F.3d 1152, 1160 (9th Cir. 2001). If the hypothetical does not contain all of the claimant's limitations, the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy. Id.

The court has the discretion to remand the case for additional evidence and findings or to award benefits. Smolen v. Chater, 80 F.3d 1273, 1292 (9th Cir. 1996). The court should credit evidence and immediately award benefits if the ALJ failed to provide legally sufficient reasons

for rejecting the evidence, there are no issues to be resolved before a determination of disability can be made, and it is clear from the record that the ALJ would be required to find the claimant disabled if the evidence is credited. Id. If this test is satisfied, remand for payment of benefits is warranted regardless of whether the ALJ might have articulated a justification for rejecting the evidence. Harman v. Apfel, 211 F.3d 1172, 1178-79 (9th Cir. 2000), cert. denied, 531 U.S. 1038 (2000).

It is also not clear that Miller is entitled to benefits. Consequently, I reverse the decision of the Commissioner and remand the case to allow the ALJ to more fully investigate Miller's psychological status. I also note that Miller's neurological analysis appears to be spread over time among various doctors, partly because of insurance problems. I also ask the ALJ to consider whether more neurological testing or examinations are needed.

## CONCLUSION

The decision of the Commissioner is reversed. This action is remanded to the Commissioner under sentence four of 42 U.S.C. § 405(g) for rehearing to further develop the record as explained above. Judgment will be entered.

Dated this   7th   day of September, 2005.

  /s/ Garr M. King  
Garr M. King  
United States District Judge